## STEELE VS. RICHARDSON.

After the adoption of the constitution of 1864, by which slavery was abolished in Arkansas, S. sold and conveyed to R. a tract of land for the expressed consideration of ten thousand dollars, but, in reality, for a number of negroes, valued at that sum, which R. warranted to be slaves for life: *Held*, on a bill in

equity to cancel the deed for the land : 1st That the facts in this case bring it within the exception to the rule, *ignorantia juris non excusat*: 2d. That the sale was entirely without consideration : 3d. That nothing of any value whatever having been paid for the land, the negroes being free, there was no necessity to offer to return them : 4th. That R. may have a remedy on the warranty, but as a court of law could not place him in possession of his land, equity would relieve him, and cancel the deed.

*Appeal from Ouachita Circuit Court in Chancery.*

Hon. JAMES T. ELLIOTT, Circuit Judge.

GALLAGHER & NEWTON, for appellant.

We think none of the grounds taken in the demurrer, separately or collectively, to be well taken.

The bill shows that the pretended consideration of ten thousand dollars in the deed of conveyance was not paid in money, as appears *prima facie*, but in negroes at that time free. *Vaugine vs. Taylor et al.,* 18 *Ark.,* 78. That the complainant accepted the pretended sale of the negroes on account of representations of defendant that they were his property and slaves for life. This misrepresentation was fatal even though innocently made, and sufficient to avoid the contract. 1 *Story's Eq., p.* 225, *sec.* 193, *and authorities cited; Harrell vs. Hill,* 19 *Ark.,* 115.

Admitting that the party contracted in ignorance of the law, still it is sufficient to avoid the contract. *State vs. Paup.,* 13 *Ark.,* 138. But this contract was based upon the *fact* that the party was ignorant that at the time it was entered into, slavery did not exist in Arkansas. *Exr's of Hopkins vs. Maseyk, et al.,* 1 *Hill's Ch. Rep.*

There was a total failure of consideration and assuredly the complainant had a right to have the conveyance annulled, though he is willing to let the agreement stand if the defendant will pay him the value of the property, (21 *Ark.,* 84 ; 1 *Eng.,* 317.)

It was unnecessary to offer to return the negroes—they were not within the control of the complainant—did not belong to the defendant when he pretended to sell them—he was in *statu quo* without a return.

GARLAND & NASH for appellee.

The contract being executed the matter is closed even if there had been no consideration whatever; if a mere voluntary gift it was then beyond reach of the parties unless fraud be alleged. *Adams Eq.*, 174–5 *et seq.*; 2 *Spence Eq. Jur.*, 885; 2 *Green. Cruise*, 532.

The mere ignorance of Steele, that negroes had been freed, will not protect him. *Adams Eq.*, 189. *State vs. Paup.*, 13 *Ark.*, 129; 7 *Geo.*, 70; 2 *McCord, Ch. R.* 455; 1 *Hill, Ch. R. (S. C.)* 250. And were it simply a fact about which Steele was ignorant, he could not be relieved without averring he could not obtain the necessary information with due diligence. *Adams Eq.*, 179,* 187,* *Mason vs. Waring*, 15 *Beav.* 151.

The bill should offer to place the parties *in statu quo*, and is demurrable for this defect. *Davis vs. Tarwater*, 15 *Ark.*, 286, *ib.* 292.

The contract being performed and executed, the parties must stand altogether on their covenants. It is not a case for equity to relieve. 1 *Parsons on Con.*, 456, 475; 6 *Eng.*, 58. Both parties knew the fact that negroes were free, or both equally ignorant of it; and it is probable that both knew it was so ordained and proclaimed, but being within the confederate lines did not heed the fact. Even if Steele had paid the money for them he could not recover it back on the contract executed, and certainly equity will not undo the contract now. 6 *Mass.*, 358; 6 *Cowen*, 431; *Adams vs. Barratt*, 5 *Georgia*, 404.

Mr. Chief Justice WALKER delivered the opinion of the court.

The complainant, Steele, charges that on the 14th day of April, 1865, he was the lawful owner of a valuable tract of land situate

in the county of Ouachita and state of Arkansas, containing four
hundred and thirty-five acres, a part of which was improved and
then in cultivation, and that the complainant also owned and was
possessed. of fifty head of cattle, fifty head of hogs, thirty-five
bushels of corn, five bushels of seed peas, eight bee-gums, a large
lot of household and kitchen furniture, together with a growing
crop of thirty acres of corn, and a growing crop of twenty acres
of wheat, which land and property were of the value of $10,000;
which sum the defendant agreed to pay in property of that value,
to-wit: negro slaves, which the defendant claimed and owned as
his property, and thereupon executed to the complainant a bill of
sale for six negroes, which he then warranted to be his property
and slaves; which negroes, so warranted to be the property of the
defendant and slaves, complainant accepted at the value aforesaid
in payment and satisfaction for said tract of land and other pro-
perty; and thereupon, together with his wife executed to the
defendant a deed in fee simple for said tract of land : that at the
time of such sale, and the execution of such deed, he the com-
plainant was ignorant of the fact that, long before that time,
slavery had been, and then was abolished and prohibited by the
constitution of the state of Arkansas. That he made the contract,
and conveyed the lands and other property in good faith, believ-
ing that the said six negroes so conveyed were slaves, and worth
the sum agreed upon. That he was induced to make the trade
and execute the deed for the land, upon the faith and confidence
in the representations of the defendant, and that the negroes were
slaves; but in truth and in fact that said negroes were not slaves,
but were then free, and that defendant had no title or property
in them whatever. And that he knew at the time said convey-
ance was made and consummated, that they were not slaves, and
that he had no right to dispose of them as such. That defendant,
although requested so to do, had refused to pay the complainant
the sum of $10,000, the price agreed upon, or to re-convey and
re-deliver the land and property so conveyed by the complainant

to him—with a prayer for the payment of the $10,000, or that the sale of the land may be set aside and an account taken, etc.

To this bill the defendant demurred; the demurrer was sustained, and a decree rendered dismissing the bill, and for costs; from which the complainant appealed.

The several allegations in complainant's bill, which are set forth at greater length than we have considered necessary to repeat here, must be taken upon demurrer as being true; and the question is, when thus taken, is the complainant entitled to relief in a court of equity?

That the complainant contracted under a mistake, there can be no doubt. No one can believe that any man in his senses would have conveyed $10,000 worth of property, to which he had an undisputed title, for no other consideration than negroes, if he had known that the negroes were not property, and that he could not in law, for a single day, command their services. The bill expressly avers that complainant was ignorant of the fact, that by the constitution of 1864, negroes were freed, and that the defendant, at the time he made the trade and represented the negroes as being slaves and his property, knew that they were not property, but were free. It is beyond all question, from the statements in the bill, that the defendant has possessed himself of valuable property worth $10,000, for which in fact he has paid not one cent, and if the bill be true, he knew, at the time he made the contract, that he was paying nothing for the property received by him. And the defendant comes into a court of equity and says that I admit this to be true, and yet a court of equity can give to the complainant no relief, because this mistake was not of fact but of law; and that the rule, *ignorantia juris no excusat*, must prevail, and denies to the complainant all relief. The existence of this rule is fully recognized, but there are exceptions to it, which are equally well understood. This question of ignorance, or mistake of law was fully considered by this court in the case of *The State vs. Paup.*, 13 *Ark. Rep.*, 109, in which the general rule, as well as the exceptions to it, was considered, and in which

25

it was held that even though the party contracting did know of. the existence of the law; yet as he mistook its legal effect, equity would relieve him. In that case as in this, the complainant got nothing by his contract, and the defendant, the state, lost nothing, parted with nothing.

It is insisted that the complainant should have returned, or offered to return the negroes. We think not. Defendant had no negroes—sold none to complainant—negroes were not the subject of sale; they were not property at the time this contract was made. The complainant acquired no title to them, and could not lawfully, for an instant, control them. Consequently he got nothing from defendant and had nothing to return.

The claim of the complainant to equitable relief does not rest alone upon his ignorance of the constitutional provision emancipating slaves, but also upon the ground that the deed made by him to the defendant, and the transfer of the chattels set forth in the bill was made without any consideration whatever. No contract without consideration is valid. A consideration is an essential requisite to all contracts. The deed, however, purported to be made in consideration of $10,000. This, in point of fact, as shown by the bill, is not true. Under this deed, which is *prima facie*, valid, the defendant had taken possession of the property and claimed to hold it. The deed, even if invalid, created a cloud on the title of the complainant, which he had a right to have removed. This was held to be permissible in the case of *Cook vs. Cole*, 2 *Halst. Ch.*, 522, 627.

In the case before us, the complainant parted with property of the value of $10,000, for which he received nothing whatever. The defendant under this contract took possession of this property, as expressly charged in the bill, knowing, at the time, that he had no title to the negroes, which he professed to sell to the complainant. No one can believe that the complainant would have parted with his property and received these negroes in payment for it, if he had known that they were free. He must, in the

OF THE STATE OF ARKANSAS. 371

very nature of things, have relied upon the false statements of the defendant, with regard to his title to the negroes.

It is true that complainant may have his recourse at law upon his bill of sale for damages upon a breach of warranty of title; but he could not be restored to the possession of his property by any process of a court of law. He is also entitled to have the deed canceled and set aside. This the court of law could not do.

In view of this whole case, which is certainly a very strong one, we are of opinion that the complainant has, upon the face of his bill, shown a case which entitles him to relief in a court of equity; and that the court below erred in sustaining a demurrer to it.

Let the decree be reversed.